IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>   v.<br><br>LAWRENCE "LEE" LOOMIS, LOOMIS WEALTH SOLUTIONS, LLC, JOHN HAGENER, AND LISMAR FINANCIAL SERVICES, LLC,<br><br>        Defendants.<br>_____/ | No. 2:10-cv-00458 MCE KJN<br><br><br><br><br><br><br>ORDER and<br><u>FINDINGS AND RECOMMENDATION</u> |

Presently before the court is plaintiff's motion for default judgment against two of the four named defendants: Loomis Wealth Solutions, LLC ("LWS"), and Lismar Financial Services, LLC ("Lismar").[1]  (Dkt. No. 20.)  Having concluded that oral argument would not materially assist the court, the undersigned hereby submits plaintiff's motion on the briefing and record on file and will vacate the hearing date.  The undersigned has fully considered the briefing and record in this case and, for the reasons stated below, will recommend that plaintiff's motion for default judgment against LWS and Lismar be denied without prejudice.

////

---

[1] This action proceeds before the undersigned pursuant to Eastern District Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

1

## I. RELEVANT FACTUAL BACKGROUND

On February 23, 2010, plaintiff filed a complaint against LWS, Lismar, defendant Lawrence "Lee" Loomis ("Loomis"), and defendant John Hagener ("Hagener") in connection with an alleged "Ponzi scheme."[2] (Dkt. No. 1.) Plaintiff alleges that Loomis is a resident of Granite Bay, California, who controlled LWS, which purported to be a financial planning company. (Compl. ¶¶ 9, 11.) Plaintiff further alleges that Hagener is Loomis's father-in-law and a resident of Roseville, California, who owned and controlled Lismar, which in turn was the managing member of certain real estate investment funds at issue here. (Id. ¶¶ 10, 12.)

Generally, plaintiff alleges that Loomis and Hagener, through LWS and Lismar, misappropriated approximately $10 million dollars from more than 100 investors located, for the most part, in California. (See id. ¶ 1.) Plaintiff alleges that Loomis and Hagener solicited individuals to invest in two real estate investment funds, referred to as the "Naras Funds," which were allegedly marketed as secure investments that were guaranteed by a third party and would offer a return of approximately 12% on investments. (Id.) Plaintiff alleges that none of these representations were true and that Loomis and Hagener were secretly diverting assets from the Naras Funds to pay the operating expenses and other expenses of other entities controlled by Loomis and Hagener. (Id. ¶¶ 2, 3.) In short, plaintiff alleges that "Loomis and his company, [LWS], and Hagener and his company, [Lismar] (collectively, "Defendants"), violated numerous provisions of the federal securities laws, including the antifraud statutes, by misappropriating investor assets, making materially false and misleading statements in connection with the purchase or sale of securities, and perpetrating a fraud on their investors." (Id. ¶ 5.)

Plaintiff alleges six claims for relief in its complaint, and each claim is alleged

---

[2] In United States v. Treadwell, 593 F.3d 990, 993 n.2 (9th Cir. 2010), the Ninth Circuit Court of Appeals provided a brief summary of the history and purposes of a "Ponzi scheme," and defined that phrase as referring "to a fraudulent scheme in which, rather than paying investor returns from investment income, initial investors are paid off with new contributions from additional investors."

against at least one individual defendant and one entity defendant. In pertinent part, plaintiff's first claim alleges that all defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (Compl. ¶¶ 52-54.) Its second claim alleges that all defendants violated Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a). (Compl. ¶¶ 56-58.) Its third claim alleges that all defendants violated Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(2), (3). (Compl. ¶¶ 59-61.) Plaintiff's fourth claim alleges that Hagener and Lismar violated Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(1), (2). (Compl. ¶¶ 62-66.) Its fifth claim alleges that Hagener and Lismar violated Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8(b). (Compl. ¶¶ 68-72.) Finally, plaintiff alleges that all defendants violated Section 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a), (c). (Compl. ¶¶ 74-77.) Plaintiff seeks to enjoin all of the defendants from further violations of the securities laws, the disgorgement of defendants' ill-gotten gains, and the payment of civil monetary penalties by defendants. (Id. ¶ 5 & pp. 15-16.)

As discussed below, the precise nature of the violations of the various federal statutes and rules allegedly effectuated through the Naras Funds is not of paramount importance to the pending motion. What is important for the purposes of resolving plaintiff's motion for default judgment is that these various claims are simultaneously alleged against the entity defendants and the individual defendants. There is significant overlap between the acts of the entity defendants and the acts of the individual defendants, which is to be expected given plaintiff's allegations that Loomis and Hagener were agents of LWS and Lismar, and that Loomis and Hagener effectuated their scheme to defraud investors through their control of LWS and Lismar. Thus, it is apparent from the complaint that the individual defendants and entity defendants can be fairly described as similarly situated for the purpose of assessing liability, at least insofar as the factual allegations in the pleadings are concerned.

Although Loomis and Hagener have appeared in this action and filed answers to

plaintiff's complaint[3] (Dkt. Nos. 8, 9), the court's docket reveals that LWS and Lismar have not appeared in this action through counsel or otherwise. Plaintiff filed two declarations of service with the court, which are attached to plaintiff's requests for entry of default.[4] (Dkt. Nos. 13, 14.) One declaration indicates that plaintiff, through a process server, served LWS by serving Loomis, who is the managing member of LWS, by substitute service.[5] (Dkt. No. 13, Doc. 13-1.) The declaration reflects that on March 7, 2010, plaintiff's process server left the summons, complaint, and related case opening documents with Loomis's wife at their residence or usual place of abode, and mailed a copy as well. Service on LWS appears to be proper pursuant to Federal Rules of Civil Procedure 4(h)(1)(A) and 4(e)(1).[6]

The second declaration of service indicates that plaintiff's process server served Lismar by transmitting the summons, complaint, and related case opening documents via FedEx to The Corporation Trust Company, which is Lismar's agent for service of process. (Dkt. No. 14, Doc. 14-1.) Service on Lismar appears to be proper pursuant to Federal Rule of Civil Procedure 4(h)(1)(B).

On June 9, 2010, plaintiff filed a Certificate of Service, which indicates that plaintiff served Loomis, LWS, and Lismar with: (1) the declarations of service of process on LWS and Lismar, and (2) requests for entry of default against LWS and Lismar. (Dkt. No. 15.)

On June 10, 2010, the Clerk of this Court entered default against LWS and Lismar. (Dkt. No. 16.) In its certificate of entry of default, the Clerk of Court stated that it

---

[3] Loomis is proceeding without counsel, and Hagener is represented by an attorney.

[4] On March 9, 2010, plaintiff also filed proofs of service with respect to all the named defendants. (Dkt. Nos. 4-7.)

[5] Curiously, plaintiff's process server's Proof of Service does not identify the specific residential address at which service on LWS was effectuated.

[6] Similarly, plaintiff's process server served Loomis via substituted service by leaving the summons, complaint, and related documents with Loomis's wife. (See Dkt. No. 5.) As noted above, Loomis has appeared in this action and filed an answer.

appeared from the record and papers on file that LWS and Lismar were each duly served with process yet failed to appear, plead, or answer the counterclaim within the time allowed by law.[7] (Id.)

On July 19, 2010, plaintiff filed a motion for default judgment against LWS and Lismar, which was procedurally deficient. (See Dkt. Nos. 18, 19.) On July 22, 2010, plaintiff filed the pending, corrected motion for default judgment. (Dkt. No. 20.) Plaintiff served its motion for default judgment on LWS, Lismar, Loomis, and counsel for Hagener. (Dkt. No. 20 at 14.) No response to the motion is reflected on the court's docket.

## II.     LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

---

[7] The certificates of entry of default states: "If there is more than one defendant in this case, counsel are . . . referred to Fed. R. Civ. P. 54(b)." (Dkt. No. 16.)

5

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." (citation and quotation marks omitted)).  A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560.

III.   ANALYSIS

In its motion for default judgment, plaintiff seeks relief against LWS and Lismar that, in great part, overlaps with the relief that plaintiff seeks against Loomis and Hagener for their roles as agents and managers of those entities.  Additionally, the claims alleged in plaintiff's complaint relate to the same alleged fraudulent scheme.  None of those claims has been resolved on the merits or otherwise as to any of defendants.  These circumstances raise concerns regarding the grant of default judgment against two of four defendants where claims will proceed against the remaining defendants who are similarly situated to the defaulting defendants.

With respect to multi-defendant cases, Federal Rule of Civil Procedure 54(b) provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." The Ninth Circuit Court of Appeals has characterized the Supreme Court's holding in Frow v. De La Vega, 82 U.S. 552 (1872), a leading case addressing the grant of default judgments in multi-

defendant cases, as follows:

> The Court held in *Frow* that, where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants. It follows that if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants.

Nelson v. Chang (In re First T.D. & Inv., Inc.), 253 F.3d 520, 532 (9th Cir. 2001) (internal citations and footnote omitted) (citing Frow, 82 U.S. at 554).[8] In In re First T.D. & Inv., Inc., the Ninth Circuit Court of Appeals followed the Eleventh Circuit Court of Appeals and extended the rule from Frow beyond jointly liable parties to parties that are "similarly situated," even if not jointly liable or jointly and severally liable. See 253 F.3d at 532; accord Wordtech Sys., Inc. v. Integrated Network Solutions, Corp., No. 2:04-cv-01971-MCE-EFB, 2009 WL 3246612, at *2 (E.D. Cal. Oct. 6, 2009) (unpublished) (observing that the rule from Frow "has been extended in cases even if the defendants are not jointly liable, as long as they are similarly situated").

        Here, the undersigned cannot conclude that there is "no just reason for delay" such that entry of default judgment against LWS and Lismar prior to the adjudication of the claims against the remaining defendants would be appropriate. As to plaintiff's first, second, third, and sixth claims for relief, which are alleged against all defendants, LWS and Lismar are similarly situated. The same is true for Hagener and Lismar with respect to plaintiff's fourth and fifth claims. As to each of these claims, plaintiff's have alleged liability as to an entity defendant that overlaps with the alleged liability of an individual defendant who has appeared in this action and intends to defend himself. To the extent that claims are ultimately resolved in Loomis's and/or Hagener's favor, there is a not insignificant risk of incongruous or inconsistent judgments were the court to determine at this relatively early stage of the proceedings that LWS and Lismar are

---

    [8] In Frow, the Court stated that "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal." 82 U.S. at 554.

7

liable for the same violations of the securities violations alleged against Loomis and Hagener.

Plaintiff may very well have valid claims against LWS and Lismar that are ultimately appropriate for entry of default judgment. However, given the overlapping nature of the claims as to different defendants, and the current stage of the proceedings, the undersigned finds that there is just reason for delay in entering default judgment as to two of the four defendants. Accordingly, the undersigned will recommend the denial of plaintiff's motion for default judgment, but will recommend denial without prejudice to the refiling of a motion for default judgment at a more appropriate time.

IV.     CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that the hearing on plaintiff's motion for default judgment, presently set for August 26, 2010, is vacated.

The undersigned FURTHER RECOMMENDS that plaintiff's motion for default judgment against defendants Loomis Wealth Solutions, LLC, and Lismar Financial Services, LLC, (Dkt. No. 20) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

////

////

IT IS SO ORDERED and RECOMMENDED.

DATED: August 23, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE