1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11   SECURITIES AND EXCHANGE                 Civ. No.  S-10-458 KJM KJN
     COMMISION,
12
                    Plaintiff,
13                                           ORDER

14        v.

15   LAWRENCE "LEE" LOOMIS,

16                  Defendant.

17

18        A motion for remedies filed by the Securities and Exchange Commission (SEC)

against defendant Lawrence "Lee" Loomis (Loomis) is currently pending before the court.   The
19
motion was submitted without argument and the court now GRANTS the motion in part and
20
DENIES it in part.
21
I.  BACKGROUND
22
          On February 23, 2010, the SEC filed a complaint against Loomis, Loomis Wealth
23
Solutions (LWS), LLC, John Hagener, and Lismar Financial Services, LLC (defendants), alleging
24
the defendants had misappropriated approximately $10 million from investors through the
25
fraudulent sale of interests in the Naras Funds.  ECF No. 1 ¶ 1.   The complaint is comprised of
26
six claims:  (1) violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.
27
§ 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5 against all defendants; (2) violations of Section
28

                                          1

1   17(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77q(a) against all defendants; (3) violations of

2   Sections 17(a)(2) and (3) of the Securities Act, 15 U.S.C. § 77q(a)(2) against all defendants;

3   (4) violations of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e (c)

4   against all defendants; (5) violations of Section 206(1) and 206(2) of the Advisers Act, 15 U.S.C.

5   § 89b-6(a), against Hagener and Lismar; and (6) violations of Section 206(4) of the Advisers Act,

6   15 U.S.C. § 206(4), 15 U.S.C. § 806b-6(4) against Hagener and Lismar.  ECF No. 1.

7         On June 10, 2010, the Clerk of the Court entered defaults as to Lismar and LWS.

8   ECF No. 16.  The court denied the SEC's motion for default judgments without prejudice to a

9   later renewal.  ECF Nos.  23, 25.

10        On May 3, 2011, Hagener filed a motion to stay the case pending resolution of

11  criminal charges.  ECF No. 30.  After further proceedings, the court ultimately denied the motion

12  for a stay on February 24, 2012.  ECF No. 52.

13        On February 13, 2013, the SEC filed a motion for summary judgment against

14  Loomis and Hagener, alleging that Loomis had violated the following provisions of the securities

15  laws:  (1) Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 (Exchange Act)

16  and Section 17(a)(1) of the Securities Act of 1933 (Securities Act) by knowingly or recklessly

17  making material misstatements and omissions to the investors in Naras Secured Funds, LLC

18  (Naras Fund 1) and Naras Secured Fund #2 (Naras Fund 2) and by knowingly or recklessly

19  engaging in a fraudulent scheme; (2) Sections 17(a)(2) and (3) of the Securities Act by

20  negligently making material misstatements and omissions to the Naras Funds 1 and 2 investors

21  and by negligently engaging in a fraudulent scheme; and (3) Sections 5(a) and 5(c) of the

22  Securities Act by offering and selling Naras Fund 1 securities and Naras Fund 2 securities in

23  interstate commerce without first registering the offers and sales with the SEC and without having

24  an exemption from registration.  ECF No. 64 at 2.  The motion raised additional claims against

25  Hagener.

26        On March 5, 2013, defendant filed a motion for an extension of time and

27  appointment of counsel.  ECF No. 73.  The court stayed the motion as to Loomis until resolution

28  /////

2

1   of his motion for the expansion of the appointment of his counsel in the criminal case.  ECF
2   No. 70.

3          On March 6, 2013, the SEC and Hagener submitted a stipulation for an injunction
4   and on March 13, 2013, the SEC filed a notice that Hagener's consent to the injunction resolved
5   the summary judgment motion as to him.  ECF Nos. 69, 71.  The court issued the order of
6   injunction as to Hagener on April 15, 2013.  ECF No. 82.

7          On April 1, 2013, counsel appeared on behalf of Loomis and thereafter the parties
8   stipulated to new dates for hearing on the summary judgment motion.  ECF Nos. 79, 81.  After
9   the opposition and reply had been filed on the summary judgment motion, Loomis filed a motion
10  to stay the motion.  ECF Nos. 86, 88.   The court denied the requested stay without prejudice on
11  August 27, 2013.

12         On September 3, 2013, the court granted the SEC's motion for summary judgment
13  on the following grounds: (1)  Loomis violated Rule 10b-5 and Section 17(a)(1) by informing
14  investors that the Naras loan funds were secured by second mortgages, that the investments were
15  highly liquid and had a twelve percent rate of return; (2) Loomis engaged in a scheme to defraud
16  in violation of Rule 10b-5, subparts (a) and (c), and Section 17(a), subparts (1) and (3), by
17  misrepresenting the solvency of the Naras Funds while accepting money from new investors to
18  use as payments to older investors; and Loomis violated Sections 5(a) and 5(c) of the Securities
19  Act by offering unregistered securities for sale.

20         On March 11, 2014, the SEC filed a motion for remedies against Loomis.  ECF
21  No. 108.  Defendant's untimely opposition was filed on April 3 and the SEC's reply was filed on
22  April 4, 2013.  ECF Nos. 112, 113.

23  II.  ANALYSIS

24         The SEC seeks three remedies:  a permanent injunction against further securities
25  violations by Loomis; disgorgement of $11,695,840 raised from Naras investors plus prejudgment
26  interest of $2,575,426 for a total of $14,271,426; and monetary penalties of $273,000.  ECF No.
27  108-1.

28  /////

3

Defendant concedes he is subject to a permanent injunction based on the court's ruling on summary judgment and his continued invocation of his right to remain silent.  He argues disgorgement is improper because he no longer has the money, either because it was used to fund his other business entities or was forfeited by the order in *United States v. Approximately $133,803.53 in U.S. Currency*, Civ. No. S-09-461 TLN, and because the evidence on summary judgment was insufficient to show that all Naras investors were defrauded.  Finally, he claims imposing a civil penalty would penalize his invocation of the right to remain silent and would constitute an excessive fine in violation of the Eighth Amendment.   He cites no case authority for any of his arguments.

In reply, the SEC says disgorgement is appropriate even though Loomis does not have any of the money and that in its summary judgment order, the court found Loomis had consistently made material misrepresentations to investors.   It also argues the proposed civil penalty is not constitutionally excessive.

A.  The Injunction

Under both 15 U.S.C. §§ 77t(b) and 78u(b), the SEC may seek a permanent injunction against a person who has violated securities laws; it bears the burden of showing "'a reasonable likelihood of future violations of the securities laws . . . .'"  *SEC v. Fehn*, 97 F. 3d 1276, 1295 (9th Cir. 1996) (quoting *SEC v. Murphy*, 626 F. 2d 633, 655 (9th Cir. 1980)).  In evaluating the likelihood of future violations, the court must consider:

> '(1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; (5) and the sincerity of his assurances against future violations.'

*Id*. at 1295-96 (quoting *Murphy*, 626 F.2d at 655).  This court has discretion to grant or deny the request for injunctive relief.  *SEC v. Goldfield Deep Mines Co. of Nev.*, 758 F.2d 459, 465 (9th Cir. 1985); *SEC v. Alpha Telcom, Inc*., 187 F. Supp. 2d 1250, 1262 (D. Or. 2002), *affirmed by SEC v. Rubera*, 350 F.3d 1084 (9th Cir. 2003).

4

As noted in the order on summary judgment, Loomis solicited over $11 million from investors from March 2007 through August 2008, representing that the investments were secured by second mortgages even though he was aware they were not.  ECF No. 97 at 9-10.   He also told investors there was a guaranteed rate of return and their investments could be redeemed quickly.  *Id*. at 12-13.  Loomis thus acted with a high degree of scienter over a period of time, factors favoring the issuance of the injunction.  *See, e.g. SEC v. Abellan*, 674 F. Supp. 2d 1213, 1220-21 (W.D. Wash. 2009) (finding defendant acted with high degree of scienter when he side-stepped registration requirements in order to manipulate demand, deceived the public and caused tangible financial losses); *SEC v. Cross Fin. Servs*., 908 F. Supp. 718, 720, 734 (C.D. Cal. 1995) (defendants acted with high degree of scienter in telling investors they would use funds to engage in factoring accounts receivable, that the annual returns would be between 15 and 20 percent, and the investments were low risk when in fact they did not factor any accounts; their knowing orchestration of and participation in the scheme shows high degree of scienter).

Loomis has never acknowledged that his actions were wrong, expressed any remorse, or suggested that he will not engage in future violations, as he relies on his Fifth Amendment right to remain silent.   Because the court is not able to evaluate whether Loomis's current attitude suggests future violation, these factors favor an injunction, but only slightly in light of Loomis's Fifth Amendment rights.

Loomis is currently detained and facing charges of mail and wire fraud carrying substantial penalties; the case is set for trial on October 6, 2014.  *United States v. Lee Loomis*, Cr. No. S-12-315 JAM, ECF Nos. 103, 117.  Nevertheless courts have enjoined people from future securities violations despite imprisonment.  *See, e.g.*, *SEC v. Bravata*, ___ F. Supp. 2d ___, 2014 WL 897348, at *21 (E.D. Mich. Mar. 6, 2014) (entering permanent injunction based on the fact that defendants "likely will have a chance to commit future violations when released from prison"); *SEC v. Lion Capital Mgmt., LLC*, No. C 12-05116 WHA, 2013 WL 5945081, at *3 (N.D. Cal. Nov. 1, 2013) (entering a permanent injunction even though the defendant was serving a sentence and would likely be deported upon release); *SEC v. Zafar*, No. 06–CV–1578 (JG)(MDG), 2009 WL 129492, at *6 (E.D.N.Y. Jan. 20, 2009) (enjoining person who was then

1    serving a sentence even though there was no indication he would return to a profession conducive

2    to securities fraud); *SEC v. Musella*, 578 F. Supp. 425, 445 (S.D.N.Y. 1984) ("[T]he inquiry goes

3    to predilection rather than immediate probability."). As Loomis's ultimate sentence, if any, has

4    not been determined, this factor favors the injunction.

5            Based on consideration of the relevant factors, the court finds the SEC has borne

6    its burden of justifying the entry of a permanent injunction.

7            B. Disgorgement and Prejudgment Interest

8            "'[A] district court has broad equity powers to order disgorgement of ill-gotten

9    gains obtained through the violation of the securities laws. Disgorgement is designed to deprive a

10   wrongdoer of unjust enrichment, and to deter others from violating securities laws by making

11   violations unprofitable.'" *SEC v. Platform Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir.

12   2010) (quoting *SEC v. First Pac. Bancorp.*, 142 F.3d 1186, 1191 (9th Cir. 1998)). The SEC bears

13   the burden of showing the causal relationship between the wrongdoing and the funds, *SEC v. One*

14   *or More Unknown Traders*, 853 F. Supp. 2d 79, 83 (D.D.C. 2012), and of showing that the

15   disgorgement figure "'reasonably approximates the amount of unjust enrichment.'" *Platform*

16   *Wireless*, 617 F.3d at 1096 (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1232 (D.C. Cir.

17   1989)). A court may order disgorgement even if the violator "'is no longer in possession of such

18   funds due to subsequent, unsuccessful investments or other forms of discretionary spending.'"

19   *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1115-16 (9th Cir. 2006) (quoting *SEC v.*

20   *Thomas James Assocs.*, 738 F. Supp. 88, 95 (W.D.N.Y. 1990)). Moreover, when parties

21   "unlawfully received money from investors by distributing unregistered securities . . . . [t]his was

22   the rough equivalent of receiving an 'interest free loan' from investors," and so "[t]he proper

23   measurement of the benefit of the 'loan' is the interest rate the defendants would have otherwise

24   paid to finance their business operations with a comparable, unsecured loan." *Platform Wireless*,

25   617 F.3d at 1099.

26           The SEC has presented the declaration of forensic accountant Caroline Van Alst,

27   who reviewed records of the Naras I and II Funds as well as of other entities that received funds

28   from the Naras Funds. Decl. of Caroline Van Alst, ECF No. 108-2 ¶¶ 1, 6. Van Alst concluded

1   that the primary source of cash in the Naras Funds was investor cash and the primary use of that

2   cash was transfers to and on behalf of Loomis entities, such as LWS for real estate purchasing

3   activity, or to Hagener and Lismar. *Id*. ¶ 9. The thirty investors in Naras I, excluding Lismar,

4   provided $1,303,083.97 and the eighty-one investors in Naras II, again excluding Lismar,

5   provided $10,392,756.33.

6          Documents from Loomis's outside accounting and auditing firm Francis, Scinto &

7   Graziano, LLP, show that Loomis controlled a number of entities in addition to LWS:  Advantage

8   Financial Group, Advantage Financial Partners, LLC-East, Advantage Financial Partners, LLC-

9   West, Nationwide Lending Group, Shasta Equity Exchange, AFG Information Technologies,

10  G&L Real Estate Group, JP Realty Group, LLC and Advantage Plan Plus. *Id*. ¶ 11. Van Alst

11  determined that through "loans" and transfers from the two Naras Funds to Loomis entities, there

12  was a total cash disbursement of $8,003,827.30. *Id*. ¶ 13. Van Alst says the money transferred

13  from the Naras Funds to the various Loomis entities was used to pay operating expenses. *Id*.

14  ¶ 15. This is borne out by evidence submitted in connection with the SEC's motion for summary

15  judgment. Karen White, the former controller of Advantage Financial Partners-West, averred

16  when she did not have sufficient cash to pay AFP's bills, Loomis would direct her or another

17  employee to ask Hagener to transfer money from the Naras Funds to the impecunious Loomis

18  entities. Decl. of Karen White, ECF No. 64-19 ¶¶ 2, 4. She rarely transferred money back to the

19  Naras Funds as interest payments on the "loans." *Id*. ¶ 7.

20         In *JT Wallenbrock*, the defendants raised money from investors through the

21  fraudulent sale of unregistered promissory notes and first deposited it in one of the group's

22  business checking accounts. 440 F.3d at 1111-12. From the funds so deposited, they paid

23  investors "returns" to maintain the illusion they were investing the money as promised; used

24  some of it to cover their operating expenses and personal expenses; and invested some of the

25  money to fund numerous start-up companies. *Id*. at 1112. The district court ordered

26  /////

27  /////

28  /////

1   disgorgement of the entire proceeds of the scheme, less the money paid to investors, plus

2   prejudgment interest.  *Id*. at 1113.  The Ninth Circuit affirmed, noting that

3
> [t]he essence of the defendants' scheme was to obtain investors'
4
> money under false pretenses in order to fund the defendants'
> business ventures.  Rather than put their own money at risk, the
5
> defendants benefitted from the use of investors' money to spend at
> defendants' discretion—whether to cover operating expenses,
6
> invest in start-up companies, pay personal expenses or pay fake
> returns to investors to perpetrate the fraud. . . . Given these
7
> circumstances, all 253.2 million obtained from investors was an ill-
> gotten gain that unjustly enriched the defendants.

8   *Id*. at 1114.  In this case, as well, the court found Loomis profited from the sale of unregistered

9   securities and from material misrepresentations about the security and profitability of the

10   investments, made to all investors, not just the four who submitted declarations in support of

11   summary judgment.  ECF No. 97 at 9-16.  Loomis similarly profited from the use of the

12   investors' money and so should be directed to disgorge those funds, along with the interest he

13   avoided by using those funds as an interest-free loan.  *See SEC v. Abacus Int'l Holding Corp*.,

14   No. C 99-02191, 2001 WL 940913, at *5 (N.D. Cal. Aug. 16, 2001) ("In assessing whether to

15   order prejudgment interest, the Court may consider the degree of personal wrongdoing on the part

16   of the defendant.").

17          Nevertheless, in connection with its motion for summary judgment, the SEC

18   presented evidence, that in traditional-Ponzi-scheme-fashion, Loomis and Hagener did use some

19   new investors' payments to pay fake returns to earlier investors.  Decl. of Caroline Van Alst, ECF

20   No. 64-18 ¶¶ 16-17 & Exs. C & D.  In exercising its equitable powers to "deprive a wrongdoer of

21   unjust enrichment," *Platform Wireless*, 617 F.3d at 1096, the court declines to order disgorgement

22   of that portion of investors' funds Loomis used to pay lulling "returns" to other investors.  The

23   SEC is thus directed to provide updated figures, showing how much of the  $11,695,840 raised

24   from Naras investors was returned to other Naras investors and to calculate the prejudgment

25   interest based on that figure.

26          C.  Civil Penalties

27          The securities laws provide for civil monetary penalties in three tiers.  A court may

28   impose third tier penalties when the violations "involved fraud, deceit, manipulation, or deliberate

8

1    or reckless disregard of a regulatory requirement [and] such violation directly or indirectly

2    resulted in substantial losses . . . ." 15 U.S.C. § 78u(d)(3)(C); *see also* 15 U.S.C. § 77t(d)(2)(C).

3    A third-tier penalty "shall not exceed the greater amount of $110,000 for a natural person . . . or

4    the gross amount of pecuniary gain to such defendant as a result of the violation . . . ." *Id.*  For

5    violations occurring after February 15, 2005 and before February 25, 2009, the maximum third

6    tier penalty for an individual is $130,000. *Bravata*, 2014 WL 897348, at *22 . In addition, the

7    maximum penalty at the first tier, for violations not involving scienter, is $6500. 15 U.S.C. §

8    77t(d)(2)(A); 17 C.F.R. § 201.1004. The SEC asks the court to impose a $130,000 penalty for

9    Loomis's violation of Section 10(b), a separate $130,000 penalty for violation of Section 17(a),

10   and two $6,500 penalties for his violations of Sections 5(a) and 5(c), for a total of $273,000.

11          A district court has discretion to impose civil penalties for securities violations.

12   *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 287 (2d Cir. 2013). Courts in the Ninth

13   Circuit sometimes consider the *Fehn* factors in deciding whether a civil penalty is appropriate.

14   *See SEC v. Wilde*, No. SACV 11–0315 DOC(AJWx), 2012 WL 6621747, at *16 (C.D. Cal

15   Dec. 17, 2012) (citing *Fehn*, 97 F.3d at 1295-96). The court may also consider "other sanctions

16   the defendant faces, whether criminal or civil." *SEC v. Church Extension of the Church of God,*

17   *Inc.*, 429 F. Supp. 2d 1045, 1051 (S.D. Ind. 2005); *but see SEC v. Henke*, 275 F. Supp. 2d 1075,

18   1086 (N.D. Cal. 2003), *affirmed by* 130 F. App'x 173 (9th Cir. 2005) (unpublished) (imposing

19   civil penalties even though defendant had paid restitution following a guilty plea).

20          As noted above, Loomis acted with a high degree of scienter, soliciting over $11

21   million in investments, which he used largely to fund his other businesses. Nevertheless, he is

22   facing criminal charges carrying the potential of a substantial term of imprisonment, large fines,

23   and restitution. In addition, money from LWS is subject to forfeiture in *United States v.*

24   *Approximately $133,803.53 in U.S. Currency*, Civ. No. S-09-461 TLN EFB. Given the

25   magnitude of other civil and criminal penalties Loomis faces, the court declines to impose a civil

26   penalty. Accordingly, it does not reach the question whether the imposition of a fine would

27   violate the Eighth Amendment.

28   /////

9

1    IT IS THEREFORE ORDERED that within fourteen days of the date of this order,

2  the SEC submit a proposed final judgment against Loomis, incorporating the permanent

3  injunction, the amount of disgorgement discussed above and the appropriate prejudgment interest,

4  and reflecting that no civil penalties are imposed.

5  DATED:  April 23, 2014.

6

7  _____

8                    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28